IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ADAM LERMA BARBOZA,

        Petitioner,              No. CIV S-03-0573 MCE GGH P

    vs.

TOM L. CAREY, Warden, et al.,       FINDINGS AND RECOMMENDATIONS

        Respondents.

_____/

I. Introduction

        Petitioner is a state prisoner proceeding with appointed counsel on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted on May 25, 1999 for felony failure to appear (Cal. Penal Code § 1320.5) of a charge of possession of methamphetamine, found guilty of two prior convictions and sentenced to 25 years to life under the Three Strikes Law (Cal. Penal Code § 667(b)-(i)/ Cal. Penal Code § 1170.12). CT[1] 265. Petitioner challenges his 1999 sentence on the following grounds: 1) felony failure to appear found to be a third strike under the Three Strikes Law, resulting in a sentence of 25 years-to-life is grossly disproportionate to the offense and violates the Eighth Amendment; and 2) trial court

_____

[1]Clerk's Transcript.

1

1   abused its discretion in failing to strike one or both priors from 1980, subjecting petitioner to

2   unconstitutionally cruel and unusual punishment.   After carefully reviewing the record, the court

3   recommends the petition be denied.

4   II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

5          The AEDPA applies to this petition for habeas corpus which was filed after the

6   AEDPA became effective.  Neeley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy,

7   117 S. Ct. 2059 (1997).   The AEDPA "worked substantial changes to the law of habeas corpus,"

8   establishing more deferential standards of review to be used by a federal habeas court in

9   assessing a state court's adjudication of a criminal defendant's claims of constitutional error.

10  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

11         In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

12  Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

13  for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

14  between "contrary to" clearly established law as enunciated by the Supreme Court, and an

15  "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

16  to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

17  Court on a point of law, or (2) if the state court case is materially indistinguishable from a

18  Supreme Court case, i.e., on point factually, yet the legal result is opposite.

19         "Unreasonable application" of established law, on the other hand, applies to

20  mixed questions of law and fact, that is, the application of law to fact where there are no factually

21  on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

22  Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

23  AEDPA standard of review which directs deference to be paid to state court decisions.  While the

24  deference is not blindly automatic, "the most important point is that an *unreasonable* application

25  of federal law is different from an incorrect application of law....[A] federal habeas court may not

26  issue the writ simply because that court concludes in its independent judgment that the relevant

2

1  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

2  that application must also be unreasonable."  <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at

3  1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

4  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

5  authority.  <u>Woodford v. Viscotti</u>, 537 U.S. 19, 123 S. Ct. 357 (2002).

6            The state courts need not have cited to federal authority, or even have indicated

7  awareness of federal authority in arriving at their decision.  <u>Early v. Packer</u>, 537 U.S. 3, 123 S.

8  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

9  contrary to, or an unreasonable application of, established Supreme Court authority.  <u>Id</u>.  An

10  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

11  occurred.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

12  established Supreme Court authority reviewed must be a pronouncement on constitutional

13  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

14  binding only on federal courts.  <u>Early v. Packer</u>, 123 S. Ct. at 366.

15            However, where the state courts have not addressed the constitutional issue in

16  dispute in any reasoned opinion, the federal court will independently review the record in

17  adjudication of that issue.  "Independent review of the record is not de novo review of the

18  constitutional issue, but rather, the only method by which we can determine whether a silent state

19  court decision is objectively unreasonable."  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir.

20  2003).

21  III.  <u>Background</u>

22            Having independently reviewed the record (primarily the Clerk's Transcript

23  (CT)), the court sets forth the facts of this case in chronological order,[2] which no party disputes,

24  as provided in the appellant's opening brief to the state Court of Appeal, footnoting the court's

25  _____

26  [2] The appellant's opening brief, by contrast, recites the most recent background first.
Exhibit B to Answer.

3

1    minor corrections:[3]

2            The District Attorney of Merced County charged appellant with
             violation of Health and Safety Code sections 11379, transportation
3            of methamphetamine, and 11377(a), possession of
             methamphetamine, occurring on June 11, 1994.  The information
4            also alleged that appellant had been convicted of two serious or
             violent felonies within the meaning of Penal Code section 667(d)
5            and (e).  (CT 3-4.)  On April 9, 1996, the date set for trial,
             appellant failed to appear, and the court issues [sic] a bench
6            warrant.  (CT 9-10.)

7            On July 18, 1998, appellant was involved in an altercation in
             Brownsville, Texas.  (CT 168-176.)  He was arrested on July 21,
8            1998, and eventually returned to California and charged with a
             felony violation of Penal Code section 1320.5, failure to appear.
9            (CT 1, 177.)

10   Answer, Exh. B, Appellant's Opening Brief, p. 3.

11           On May 5, 1999, the District Attorney of Merced County filed an
             information complaint charging appellant with violation of Penal
12           Code section 1320.5, failure to appear, occurring on April []9,
             1996,[4] after having been charged with violation of Health and
13           Safety Code section 11379, transportation of methamphetamine.
             The information further alleged that appellant came within the
14           three strikes law based upon simultaneous convictions on March
             25, 1980, on two counts of violation of Penal Code section 245(b),
15           assault with a semiautomatic firearm.  (CT 15-16.)  Appellant
             entered his not guilty plea on May 5, 1999.  (CT 18.)
16
             On May 25, 1999, appellant entered a nolo contendere plea to the
17           failure to appear with the transportation charge to be dismissed
             with a stipulation that the court could consider all of the contents
18           of the file on the transportation charge for purposes of sentencing.
             Appellant also admitted the enhancement, i.e., that he had been
19           convicted in 1980 of two serious or violent felonies which brought
             him within the provisions of the three strikes law.  The court
20           advised him that he faced the possibility of a twenty-five years to
             life term, with a minimum of twenty-five years, and a lifetime
21           parole.  (CT 22-34.)

22           On August 20, 1999, appellant moved to strike prior convictions
             pursuant to Penal Code section 1385 and People v. Superior Court
23

24           [3] The California Fifth District Court of Appeal decision set forth the background in a
     skeletal, rather than comprehensive, fashion.
25
             [4] Here, the court has corrected the date that was inaccurately set forth at this point in
26   appellant's opening brief.  CT 1, 15, 31-32, 178.

4

1    (Romero) (1996) 13 Cal.4th 497.  (CT 56-65, 250.)  On August 30,
     1999, the court denied the motion and sentenced appellant to
2    twenty-five years to life, ordered him to pay a restitution fine of
     $2,000 pursuant to Penal Code section 1202.4,[5] stayed a restitution
3    fine of $2,000 pursuant to Penal Code section 1202.45, and
     awarded him 252 days credit, including 168 actual days and 84
4    conduct credits.  (CT 250, 265-266, 282-284).

5    Ans., Exh. B, pp. 1-2.

6    IV.  Discussion

7              Claim 1- Gross Disproportionality of Sentence under Three Strikes

8              In the original petition, petitioner states that he has been handed a likely life

9    sentence for "ten dollars of methamphetamine and a failure to appear."  Petition, p. 13.  He

10   argues that the (nearly) 20-year old priors, for assault with a deadly weapon, arose from one

11   incident and were too remote in both time and kind to constitute two strikes under the three-

12   strikes law.  Id., pp. 11-13.

13             In the supplemental memorandum of points and authorities later provided by

14   petitioner's counsel, the contention is that the events leading up to petitioner's sentence began on

15   May 25, 1994.  Supp. Mem., p. 1.  Petitioner contrasts what occurred on May 25, 1994, when

16   petitioner was stopped on a traffic violation in Stanislaus County and then arrested when he was

17   found to be in possession of .08 grams of methamphetamine, to what happened when petitioner

18   was stopped for another traffic violation in Merced County some two and a half weeks later, on

19   June 11, 1994.  Id., pp. 1.  In the Stanislaus County arrest, the prosecutor recommended, and the

20   court granted, diversion.  Id., citing CT 57, 104.  In the Merced County traffic violation stop,

21   petitioner was discovered to have been in possession of .13 grams of methamphetamine.  Id., p.

22   2.  As a result of the arrest that followed in Merced County, petitioner was initially charged,

23   pursuant to Cal. Health & Safety Code § 11377, with a misdemeanor count of simple possession

24

25             [5] Petitioner was ordered to pay the $2000 restitution fine pursuant to Cal. Penal Code §
     12024(b).  CT 250 & Exh. A to Ans., Merced County Superior Court Hearing on PC § 1385
26   motion.

1   of a controlled substance.  Id.  Upon the prosecution's discovery of the two prior strikes — two

2   convictions pursuant to Cal. Penal Code § 245(b), assault with a deadly weapon, both sustained

3   on March 25, 1980, — the complaint was amended to charge petitioner with felony

4   transportation of a controlled substance under Cal. Health & Safety Code § 11379, making

5   petitioner ineligible for diversion, and charged with the three-strike sentencing enhancement as

6   well as for the 1980 convictions.  Id.

7          Petitioner was released on bail on February 15, 1995 and then completed his

8   Stanislaus County diversion program, after which that case was dismissed.  Supp. Mem., p. 2.

9   As noted, petitioner failed to appear on the Merced County charges; more than four years later,

10  upon being returned to California, petitioner was charged with felony failure to appear under Cal.

11  Penal Code § 1320.5.  Id., citing CT 57.   Petitioner pled no contest to the charge of failure to

12  appear and admitted the truth of the allegation charging the two prior strikes.  Id., citing 23-35.

13  After the court declined petitioner's invitation to strike either or both of the prior convictions and

14  he was sentenced to 25 years to life, the sentence was affirmed on appeal and the state supreme

15  court denied review.  Id., pp. 2-3, citing CT 283-284 & petition, p. 3; Answer, p. 2, Exhibits C,

16  E.  Although petitioner's direct appeal claim of abuse of discretion by the trial court in having

17  failed to exercise its power to strike the prior convictions resulted in a denial with an unpublished

18  opinion by the state appellate court (Exhibit C to answer), petitioner's series of state court habeas

19  challenges, brought pro se on the ground that his sentence violated the Eighth Amendment,

20  resulted in a denial with a written memorandum only in the superior court on July 2, 2002; the

21  state appellate court issued a postcard denial on August 21, 2002, and the petitions were

22  concluded with a summary denial by the state supreme court on February 19, 2003.  Supp. Mem.,

23  p. 3 & attachment; Answer, pp. 2, 6, Exhibits I, K.   Respondent concedes that the Merced

24  County Superior Court's opinion is the last reasoned state court decision on this ground.

25  Answer, p. 11.

26  \\\\\

1    When the state supreme court issues a postcard denial, "we 'look through'

2 the unexplained California Supreme Court decisions [sic] to the last reasoned decision, the state

3 appellate court's decision, as the basis for the state court's judgment.'" Gill v. Ayers, 342 F.3d

4 911, 917 n. 5 (9th Cir.2003) (quoting Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th

5 Cir.2000), citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S. Ct. 2590 (1991)).   In this

6 case, where the state appellate court is similarly silent in its denial, this court must, as petitioner

7 contends, "look through" to the reasoning of the state superior court, to determine whether or not

8 that decision is "contrary to" or "an unreasonable application of" clearly established federal law

9 under AEDPA, 28 U.S.C. § 2254(d).  Supp. Mem., p. 4, n. 2, citing Bailey v. Rae, 339 F.3d

10 1107, [1111-]1113 (9th Cir. 2003).

11    The Merced County Superior Court issued the following ruling on petitioner's

12 habeas application:

13 Petitioner has filed a petition for writ of habeas corpus.  He alleges
that his sentence of life imprisonment with a minimum of 25 years
14 is grossly disproportionate and thereby violates the 8th
Amendment of the Constitution of the United States.

15

16 The California Supreme Court has held that the Three Strikes Law
does not violate the federal and constitutional provision that
prohibit [sic] cruel and unusual punishment.  People v. Dotson
17 (1997) 16 C.4th 547.

18 The United States Supreme Court has not invalidated California's
Three Strikes Law.  The United States Supreme Court has
19 traditionally accorded state legislatures considerable difference
[sic] to determine the length of sentence.  Riggs v. California
20 (1999) 525 U.S. 1114.

21 The petitioner's criminal background is extensive.  The following
is a summary of the petitioner's criminal record:
22

23 1972  Petty Theft
1974  Burglary, Minor in Possession of Alcohol; DUI
1975  DUI
24 1976  DUI
1977  DUI, Battery
25 1978  DUI, Malicious Mischief
1979  Public Intoxication
26 1980  PC 246 (felony), 2456 (4 counts, felonies); Sentenced to

7

1      CDC for 12 years
       1988   Paroled
2      1989   11550, DUI
       1989   DUI; Returned to CDC - Parole Violation
3      1990   Paroled
       1992   DUI, 14601.1(a)
4      1993   14601.1(a)
       1994   11377 (diversion)
5      1995   DUI, 14601.1(a)
       1995   11377 (fugitive thereafter)
6      1999   Failure to Appear

7      In 1999, the Court considered petitioner's criminal record,
       circumstances of his present conviction, his character and
8      prospects and declined to strike any of the enhancements.
       Based on petitioner's present offense, his criminal record and the
9      character of petitioner and his prospects, the sentence is not cruel
       and unusual.

10     The petition is denied.

11

12   Attachment to Supp. Mem.

13           Petitioner notes that he did not pose a facial challenge to the Three Strikes Law

14   and contends, correctly, that Dotson, supra, does not address the constitutionality of the Three

15   Strikes Law, but, rather, speaks to the issue of whether a separate consecutive determinate

16   sentence is to be imposed for prior serious felony convictions when such convictions also serve

17   as sentence enhancements for calculating the minimum term of the life sentence under the Three

18   Strikes Law.  Supp. Mem., p. 4.  In Riggs v. California, 525 U.S. 1114, 119 S. Ct. 890, 891

19   (1999), while Justice Kennedy in a concurring opinion noted that the United States Supreme

20   Court "has traditionally accorded to state legislatures considerable (but not unlimited) deference

21   to determine the length of sentences 'for crimes concededly classified and classifiable as

22   felonies,'...." quoting Rummel v. Estelle, 445 U.S. 263, 274, 100 S. Ct. 1133 (1980), the Court

23   did not grant certiorari for petitioner therein with respect to the application of California's Three

24   Strikes Law in the context of its application to petty offenses and expressly did not reach the

25   merits of petitioner's Eighth Amendment claim.

26   \\\\\

1    However, it is evident that the superior court did articulate petitioner's precise

2  challenge.  Although petitioner contends that in the last reasoned state court decision the trial

3  court failed to apply clearly established federal law to petitioner's claim that his sentence was

4  grossly disproportionate (supp. mem. 4, p.; traverse, p. 2), under the AEDPA it is unnecessary for

5  the state court even to have indicated awareness of federal authority in arriving at its decision.

6  Early v. Packer, supra, 537 U.S. 3, 123 S. Ct. 362.  This court finds that the state court decision

7  clearly expresses the constitutional claim at issue and has addressed it; de novo review is only

8  called for where the state court decision is "silent as to the federal question."  Himes v.

9  Thompson, supra, 336 F.3d at 853 & n. 3.  It is for this court only to determine whether the

10  decision itself is contrary to, or an unreasonable application of, established Supreme Court

11  authority.  Early v. Packer, supra.

12    Although failure to appear can be charged as either a felony or a misdemeanor,

13  under Cal. Penal Code § 1320.5, "[e]very person ...charged with...the commission of a felony,

14  who is released from custody or bail, and who in order to evade the process of the court willfully

15  fails to appear as required, is guilty of a felony."  Petitioner concedes that the underlying offense

16  for which he failed to appear was a felony but contends that his sentence constitutes cruel and

17  unusual punishment because failure to appear "falls among the least serious of crimes."  Supp.

18  Mem., p. 6.  "Failure to appear" is not included among the felonies set forth in the state's Three

19  Strikes Law as "serious" or "violent" enough to be counted as a strike.  Id., citing Cal. Penal

20  Code §§ 667, 667.5, 1192.7.   Outside of application of the Three Strikes Law, felony failure to

21  appear may be punished by a fine not to exceed $10,000; imprisonment in the county jail for not

22  more than one year' imprisonment in state prison for sixteen months, or two or three years; or

23  both fine and imprisonment.  Supp. Mem., p. 7, citing Cal. Penal Code § § 1320.5, 18.

24  Petitioner's prior crimes were committed some 19 years (almost 20 years) prior to his current

25  1999 conviction; as to the two counts of assault with a deadly weapon of which petitioner was

26  convicted in 1980, they occurred at the same time and he was prosecuted and sentenced for them

1   in one proceeding.  Supp. Mem., pp. 9-10.  Petitioner also points to a declaration by the arresting

2   officer, wherein he states that petitioner was not the individual who shot at him and other officers

3   on November 25, 1979 and cites Johnson v. Mississippi, 486 U.S. 578, 108 S. Ct. 1981 (1988).

4   Id. at 10, Exh. A to petition; CT 65.  (Johnson, however, is a capital case wherein it was found

5   that imposition of a death sentence violated the Eighth Amendment's prohibition on cruel and

6   unusual punishment because it was based in part on a reversed conviction; petitioner's conviction

7   herein of the underlying offense has not been reversed).  In sum, petitioner argues that his present

8   conviction is for an inherently passive and non-violent crime, at the least serious end of the

9   sentencing spectrum, but that his sentence is one reserved in California for the most violent and

10  reprehensible of crimes, such as first degree murder, that under Lockyer v. Andrade, 538 U.S.

11  63,72, 123 S. Ct. 1166, 1173 (2003), the Court established that "one governing legal principle

12  emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is

13  applicable to sentences for terms of years," and that the state's only rationale for the extremity of

14  petitioner's sentence is his recidivism, which while justifiably punished more severely than is a

15  first time offender, does not afford the state a "blank check to add any enhancement it chooses."

16  Supp. Mem., pp. 4-11.

17         Like the petitioner in Lockyer v. Andrade, petitioner in the instant case cites

18  variously Rummel v. Estelle, 445 U.S. 263, 100 S. Ct. 1133 (1980); Solem v. Helm, 463 U.S.

19  277, 103 S. Ct. 3001, (1983), and Harmelin v. Michigan, 501 U.S. 957, 111 S. Ct. 2680 (1991),

20  all precedents which the subsequent Lockyer Court, recognized as clearly establishing only the

21  gross disproportionately principle, "the precise contours of which are unclear, applicable only in

22  the 'exceedingly rare" and 'extreme' case."  Lockyer v. Andrade, 538 U.S. at 73, 123 S. Ct. at

23  1173.

24         "Under California's three strikes law, any felony can constitute the third strike,

25  and thus can subject a defendant to a term of 25 years to life in prison."  Lockyer v. Andrade, 538

26  U.S. 63, 67, 123 S. Ct. 1166, 1170.  Although a sentence that is "grossly disproportionate" to the

1    crime committed violates the Eighth Amendment prohibition against cruel and unusual

2    punishment, state legislative policies directed to the problem of criminal recidivism are an

3    important factor and are entitled to great deference in weighing the "gravity of the offense" for

4    which an enhanced sentence is given under state repeat offender laws.  Ewing v. California, 538

5    U.S. 11, 29-30, 123 S. Ct. 1179, 1189-1190 (2003).  Deference given to state recidivism policies

6    in Eighth Amendment cases, however, is not unlimited.  Id. at 30, 123 S. Ct. at 1190.  And in

7    some "exceedingly rare" and "extreme case[s]," sentences validly imposed under a state

8    recidivism statute may still violate the Eighth Amendment.  Lockyer v. Andrade, 538 U.S. at 73.

9    123 S. Ct. at 1173; Ewing v. California, 538 U.S. at 30, 123 S. Ct. at 1190.

10           Each of the above cases involved an Eighth Amendment challenge after the

11   sentences for relatively minor offenses were greatly enhanced pursuant to state repeat offender

12   laws.  They also involved enhanced sentences that mandated a minimum term of imprisonment

13   by reason of the defendant's repeat offender status that was higher than the maximum prison

14   term that could have been imposed for the same crime as a first offense.  In each of these cases,

15   the Supreme Court first found that the "gross disproportionality" standard was the applicable

16   legal standard.  Next, the Court reasoned that the "gravity of the offense" for which the enhanced

17   sentence was imposed must be assessed under the Eighth Amendment, not only by reference to

18   the nature and severity of the triggering offense, but also by reference to the state's recidivism

19   policy, as expressed in the state's repeat offender statutes, and to the totality of the offender's

20   criminal history.

21           In Lockyer and Ewing, the Supreme Court affirmed California Three Strikes Law

22   sentences for two "career criminals" with lengthy criminal histories and triggering offenses that

23   repeated their prior crimes.  In Lockyer, a federal habeas proceeding, the defendant was

24   convicted of two felony counts of petty theft with a prior conviction and sentenced to two

25   consecutive terms of 25 years to life.  Andrade's criminal history included the following

26   activities: multiple counts of burglary, for which he was sentenced 120 months in prison;

1   misdemeanor theft, for which he was sentenced to six days in jail with a year of probation;

2   transportation of marijuana, for which he was sentenced to eight years in federal prison;

3   misdemeanor theft, for which he was sentenced to 180 days in jail; and transportation of

4   marijuana, for which he was sentenced to 191 days in federal prison.  He was also arrested for a

5   state parole violation arising from his escape from federal prison.  The Supreme Court held that

6   because "the precise contours" of the gross disproportionality principle were "unclear" the state

7   court did not make an objectively unreasonable application of clearly established federal law.

8   Lockyer, 538 U.S. at 68-70.

9          In Ewing, a direct appeal case, the Supreme Court affirmed the state court's

10  upholding of Ewing's sentence of 25 years to life in prison.  Ewing, 538 U.S. at 29-30.  The

11  triggering offense for Three Strikes Law purposes was grand theft of $1,200 of merchandise and

12  was petitioner's fifteenth conviction for which he had previously served nine separate terms of

13  incarceration.  Id. at 18.  Petitioner's criminal history evidenced a pattern of increasing violence.

14  While noting that Ewing's triggering offense of grand theft "was certainly not one of the most

15  passive felonies a person could commit . . . .  In weighing the gravity of Ewing's offense, we must

16  place on the scales not only his current felony, but also his long history of felony recidivism.

17  Any other approach would fail to accord proper deference to the policy judgments that find

18  expression in the legislature's choice of sanctions."  Id. at 28-30.  After careful consideration of

19  Ewing's triggering offense, along with his long, violent criminal history, the Court ruled that

20  Ewing's sentence did not raise an inference of gross disproportionality.  Id. at 30.

21         In a recent case decided post Lockyer and Ewing and unaddressed in the briefing

22  of the parties herein, the Ninth Circuit found that the 25-year-to-life sentence under the Three

23  Strikes Law was unconstitutional where imposed for a third offense of shoplifting a $199 VCR

24  and the petitioner's prior criminal history consisted solely of two convictions for second-degree

25  robbery upon a single guilty plea.  Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004).  The federal

26  appellate court held that these facts constituted one of those "exceedingly rare" cases, referenced

12

1  in Lockyer v. Andrade, supra, in which the sentence imposed was grossly disproportionate.

2  Ramirez, 365 F.3d at 756-57.  Prosecutors in the 1996 charge used two nonviolent shoplifting

3  offenses committed in 1991 to which petitioner had pled guilty for which he had served one

4  sentence of just over six months in county jail to charge petitioner with one count of petty theft

5  with a prior theft-related conviction, punishable as a felony, after which the jury found the 1991

6  convictions were strikes.  Id. at 756.  Although the trial court, pre-trial, had indicated an

7  inclination to do so, it denied Ramirez's motion to strike one or both of the two prior shoplifts.

8  Id.  The 25 year-to-life sentence imposed for three shoplifting convictions, the Ninth Circuit

9  noted, was more severe than that which would have been imposed if any of the crimes had been

10  murder, manslaughter or rape.  Id.

11          Ramirez pled guilty to the two earlier shoplifting offenses, unaware that he was

12  putting two strikes on his record, since the Three Strikes Law had not yet been enacted.  Id. at

13  757.   He took the plea for a one year sentence in county jail and three years probation after

14  having allegedly been told that his failure to do so would result in his sister, also implicated in

15  one of the shoplifts, being sentenced to five years in prison.  Id.  Ramirez served six months and

16  twenty days, was released and completed probation without incident.  Id.   Ramirez had no

17  encounters with the law until the third shoplifting offense several years later in which no force or

18  violence was associated; minimal force was associated with the prior offenses.  Id. at 757-58.

19  Ramirez could have been charged with a misdemeanor petty theft and sentenced to a maximum

20  of six months in jail.  Id. at 758.  Ramirez, unlike the recidivists in Rummel, Solem, Ewing and

21  Andrade, (and unlike petitioner herein) had never been sentenced to state prison, and in his entire

22  criminal history, had only served one period of incarceration in county jail.  Id., at 769.   Finding

23  Ramirez's case to constitute one of "the extremely rare case that gives rise to an inference of

24  gross disproportionality,...." the court proceeded to a comparative analysis of his sentence, intra

25  and inter jurisdictionally.  Id ., at 770-773.  The state court was ultimately found to have

26  \\\\\

1    unreasonably applied the gross disproportionality principle to the "unique facts of Ramirez's

2    case." Id., at 774.

3            In light of Lockyer and Ewing, petitioner's sentence herein could only be found to

4    be grossly disproportionate to the crime committed for Eighth Amendment purposes if the facts

5    of his case were sufficiently analogous to those of the "extremely rare" case identified in

6    Ramirez.   Favoring petitioner is that the two prior strikes for which his sentence was enhanced

7    involve, as did Ramirez's, a single proceeding, and, even more favorable for petitioner herein,

8    petitioner's two counts occurred on the same day as part of essentially the same incident,[6] while

9    Ramirez was pleading to two separate shoplifting incidents, occurring on two distinct dates (one

10   in January, 1991, the other in September of the same year) at two different stores.  Ramirez,

11   supra, at 757.  However, the appellate court emphasized as key factors favoring Ramirez

12   circumstances that are absent here: Ramirez's prior convictions did not involve the use of a

13   weapon, nor did they result in incarceration in state prison; by contrast, petitioner was convicted

14   of two counts of assault with a deadly weapon and personal use of a firearm (notwithstanding any

15   evidence that was not presented to his jury in support of his contention that he did not fire upon

16   police officers), and was sentenced to twelve years in state prison.  Nothing in the record

17   indicated that Ramirez had had run-ins with the law other than the three shoplifting convictions.

18   Even petitioner's counsel concedes that between the two prior strikes and the triggering offense,

19   petitioner's record "was not entirely free of crime," even while he ascribes to those "brushes with

20   the law" indications of "a declining level of criminality," thus seeking to distinguish these facts

21   from those of petitioner in Ewing.  Traverse, pp. 2-3.  That the Three Strikes Law may punish

22   those whose criminal activities escalate more moderately than those whose criminal conduct

23

24          [6] As noted by the Ramirez court, "for purposes of a Three Strikes sentence, '[t]he fact that
     [the defendant's] prior convictions were adjudicated in a single proceeding does not mean that
25   they constitute one prior conviction; two strikes can arise from one case." Ramirez, supra, at 758
     n.3, citing People v. Superior Court (Arevalos), 41 Cal. App.4th 908, 916, 48 Cal. Rptr.2d 833,
26   838 (1996).

1   declines, as in the example provided by petitioner (traverse, pp. 3-4), where one who commits a

2   grand theft, a burglary, then a robbery would be treated as a two-striker while one who

3   committed the crimes in reverse order, demonstrating a declining level of criminality, would be

4   deemed a three-striker, is irrelevant for the purposes of applying the law clearly established by

5   the Supreme Court.  Petitioner's multiple intervening convictions as set forth in the state court

6   denial of his habeas petition include having violated his parole upon release from the state prison

7   term arising from his prior convictions and having been thereafter returned to state prison, as

8   well as having been convicted on various alcohol and drug related offenses within two years of

9   having been paroled a second time from state prison.  Prior to the convictions that resulted in his

10  two prior strikes, petitioner's juvenile and adult criminal history shows a repeated pattern of

11  engagement in criminal activity ranging from petty theft, burglary, and battery to multiple

12  instances of driving under the influence.  The facts of petitioner's case are similar to those in

13  Lockyer.  Petitioner's two prior convictions involved  violence (i.e., petitioner fired at an

14  inhabited building with a sawed off shotgun and was found guilty of four counts of assault on a

15  peace officer).  CT 82, 106.  As did the defendants in Ewing and Lockyer, petitioner has a

16  lengthy criminal history spanning over 20 years, and had been incarcerated in state prison at least

17  twice prior to the current sentence (once for his 1980 conviction and once for a parole violation).

18  While petitioner's criminal history is arguably not as bad as that of either of the petitioners in

19  Andrade and Ewing, it does not demonstrate a criminal record sufficiently analogous to that of

20  Ramirez to warrant habeas relief.   While petitioner's record of convictions may not demonstrate

21  an escalating pattern of criminal behavior,[7] it does show an almost uninterrupted pattern of

22  scrapes with the law between the time he was released from incarceration on his two prior strikes

23  \\\\\

24  _____

25      [7] The court does not consider the alleged events leading up to petitioner's having been
    returned to the state after having fled to escape prosecution in 1996, but does note that it is part
    of the record that it was petitioner's inability to keep from drawing the attention of law
26  enforcement that resulted in his current incarceration.

1    and convicted of the third strike (not even considering his history prior to the 1980 conviction).

2    See CT 86-91; 104-107.

3                Accordingly, the state court's application of Supreme Court precedent was not

4    "objectively unreasonable," and petitioner is not entitled to habeas relief on this ground.

5                        Claim 2 - Abuse of Discretion

6                Respondent's contention that petitioner's claim does not state a violation of

7    federal law, a claim raised by petitioner in his original petition but not addressed by his counsel

8    in supplemental briefing, is correct.  Answer, p. 13.  Rather, he is alleging a state law violation.

9                Petitioner claims that the trial court abused its discretion in failing to exercise its

10   discretion, pursuant to Cal. Penal Code § 1385, and that the state court of appeal's denial resulted

11   in his being denied "meaningful consideration" of the relief available to him under § 1385 and

12   resulted in an unconstitutional sentence.  Petition, p. 15.  Cal. Penal Code § 1385 authorizes a

13   judge on a motion brought sua sponte, or by the prosecuting attorney, "in the furtherance of

14   justice," to strike a prior conviction.  Respondent contends that petitioner does not even frame a

15   claim of state law violation because under Cal. Penal Code § 1385, petitioner has no right to

16   move to strike prior convictions and thus is not entitled to relief thereby, but may only informally

17   suggest that the court exercise its discretion to bring such a motion.  Answer, p. 14, fn. 9.

18   However, the state supreme court has held that "a trial court's refusal or failure to dismiss a prior

19   conviction allegation under section 1385 is subject to review for abuse of discretion."  People v.

20   Carmony, 33 Cal. 4th 367, 375, 14 Cal. Rptr. 880, 886-887 (2004).

21               Thus, construing petitioner's claim as a state law claim, a writ of habeas corpus is

22   available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law

23   binding on the state courts.  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez

24   v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is unavailable for alleged error in the

25   interpretation or application of state law.  Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln

26   v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th

1   Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright,

2   407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

3          In any event, the California Court of Appeal correctly applied the law, noting that

4   the trial judge was aware of its discretion to strike one or both of petitioner's convictions and,

5   although not required to (People v. Benevides, 64 Cal. App.4th 728, 735 (1998)[8]; People v.

6   Gillespie, 60 Cal. App. 4th 429, 434 (1997)), thereafter provided him with an explanation, which

7   included informing petitioner that the court had reviewed the record, including petitioner's brief

8   and considered the circumstances of both the current offense and prior convictions.  Exhibit C to

9   Answer, Fifth District Court of Appeal decision on direct appeal, pp. 2-3.

10         Because the denial of this claim by the California Supreme Court was not an

11  unreasonable application of clearly established Supreme Court authority, this claim should be

12  denied.

13         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

14  a writ of habeas corpus be denied.

15         These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within ten days after service of the objections.  The parties are advised

21  \\\\\

22  \\\\\

23  \\\\\

24  \\\\\

25

26     [8] Disapproved on another ground by People v. Carmony, supra, 33 Cal.4th 367, 14 Cal.
    Rptr. 880.

17

1    that failure to file objections within the specified time may waive the right to appeal the District

2    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3    DATED:   6/15/05

4                                                          /s/ Gregory G. Hollows

5                                                          GREGORY G. HOLLOWS
                                                           UNITED STATES MAGISTRATE JUDGE

6    GGH:009
     barb0573.fr

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26